UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN G.,

                        Plaintiff,

v.	                                                                      CASE # 20-cv-01587

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:	                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC       KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff                                    MELISSA M. KUBIAK, ESQ.
1231 Delaware Avenue
Suite 103
Buffalo, NY 14209

U.S. SOCIAL SECURITY ADMIN.                     ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **GRANTED**, the defendant's motion for judgment on the administrative record is **DENIED,** and the decision of the Commissioner is **REMANDED**.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on February 27, 1991, and has at least a high school education. (Tr. 907). Plaintiff alleged disability based on a concussion with memory loss, confusion and inability to focus for long periods, depression, anxiety, headaches, panic attacks, social anxiety, sleep issues, inability to follow verbal directions and imbalance with dizziness. (Tr. 84-85). His alleged onset date of disability is November 30, 2012, and his date last insured was June 30, 2014. (Tr. 894).

   B.  **Procedural History**

On January 15, 2014, plaintiff protectively applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act. (Tr. 84). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On August 18, 2016, a video hearing took place before ALJ Michael Carr. (Tr. 53-82). On September 28, 2016, ALJ Carr issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 17-41). On October 25, 2017, the Appeals Council (AC) denied plaintiff's request for review. (Tr. 1-6). Thereafter, plaintiff timely filed suit at the United States District Court for the Western District of New York and on February 5, 2019, the Court remanded the case back to the Commissioner for further administrative proceedings. (Tr. 1068-78).

During the pendency of his appeal to United States District Court, plaintiff filed a claim for Title XVI disability benefits (SSI). (Tr. 1080). Plaintiff's subsequent Title XVI claim was consolidated with the Title II claim. (Tr. 937).

On February 5, 2020, ALJ Gregory Hamel held a video hearing but due to issues with the administrative transcript, the ALJ held a subsequent hearing on June 16, 2020. (Tr. 919-32, 934-

95). On August 24, 2020, the ALJ issued an unfavorable decision to plaintiff on both claims. (Tr. 888-917). This timely action followed.

### C. The ALJ's Decision

Generally, in his 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful during since November 30, 2012 the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: post-concussion syndrome and traumatic brain injury with vertigo; neurocognitive disorder; depressive disorder; adjustment disorder; generalized anxiety disorder, post-traumatic stress disorder (PTSD), substance abuse disorders; and asthma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant cannot climb ladders or similar devices or work in hazardous environments, for example, at heights or dangerous machinery. He cannot work in exposure to high levels of dust, fumes, gases and other pulmonary irritants. He can focus attention on and perform simple, routine, and repetitive tasks only; cannot read on more than an occasional basis; cannot do tasks requiring more than occasional public contact or more than occasional interactions with coworkers; and cannot do tasks with a strong production pace element.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 27, 1991, and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 FCR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not

    disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Par 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2012, through June 30, 2014, the date his insured status expired, or at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 888-909).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff primarily argues that the ALJ did not properly evaluated the disability-supporting opinions of plaintiff's treating sources. (Dkt. No. 13 [Plaintiff's Mem. of Law]).

### B. Defendant's Arguments

In response, defendant asserts substantial evidence supports the ALJ's RFC finding and evaluation of medical opinions. (Dkt. No. 15 [Defendant's Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant

will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.  **ANALYSIS**

The Commissioner advises disability applicants as to the importance of submitting medical opinions from treating doctors. *See* 20 C.F.R.§ 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). In this case, plaintiff was able to obtain opinions from several treating sources, yet the ALJ discounted them. The ALJ also gave little or limited weight to the other opinions of record. Where an ALJ gives a treating physician's opinion something less than controlling weight, he must provide good reasons for doing so.[1] The Second Circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. *See Schaal v. Apfel,* 134 F.3d 496, 503-05 (2d Cir. 1998*); see also Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The

---

[1] The "treating physician rule" was in effect at the time plaintiff's claim was filed.

SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

Case law has provided what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)(internal citations, quotations, and alterations omitted). While 20 C.F.R. § 404.1527 provides a number of factors that an ALJ considers when evaluating medical opinions, "[a]n ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Here, ALJ Hamel decided to accord little weight to the medical opinions of the plaintiff's concussion management and rehabilitation specialist Dr. Leddy, treating psychologist Dr. Radziwon, and treating psychiatrist specialist PA-C Wagner. Contrary to defendant's assertion that plaintiff is seeking a reweighing of the evidence, plaintiff is arguing the ALJ failed to properly evaluate the opinion evidence under the regulations. For the reasons below, the Court agrees.

In the ALJ's summary of the evidence, he acknowledges Dr. Leddy has treated the plaintiff from November 2013 to September 2019 for issues of dizziness, imbalance, visual tracking, and issues with concentration since a traumatic brain injury (TBI). The ALJ noted treatment reports of

7

improvement with vestibular therapy but as recently as September 2019, an unsteady tandem gait. (Tr. 900). The ALJ also identified records from service providers Dr. Leddy had referred plaintiff to for specialized treatment related to his TBI, such as speech and language therapy and vestibular rehabilitation.

Dr. Leddy provided a total of eight opinions, which the ALJ very briefly identified. (Tr. 903-02). While some were indeed conclusory statements on issues reserved for the Commissioner, others were lengthy and consisted of numerous physical and mental limitations. The ALJ never identified any of the specific physical limitations but broadly summarized Dr. Leddy's March 2014 opinion of "additional postural, manipulative and mental restrictions", and the July 2016 opinion of "many environmental, postural, and manipulative factors." (Tr. 903 *referring to* 600-01, 701). For the October 2019 opinion the ALJ only noted "claimant had marked limitations in many areas and was incapable of low stress work." (Tr. 904 *referring to* 1603). Although the December 2019 opinion recognized plaintiff was moderately to very limited in functional areas, the ALJ interpreted the opinion as precluding plaintiff from working in a competitive employment for at least 80 hours per month. (Tr. 904 *referring to* 1430-31). While an ALJ is not required to list all limitations, it must be evidence that the limitations and other evidence were considered. Further, if an ALJ rejects portions of a medical opinion in formulating an RFC, he or she must explain his or her rejection reasons in the decision. *Caternolo v. Astrue*, 2013 WL 1819264, *9 (W.D.N.Y. 2013) (collecting cases standing for the "fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted); *Searles v. Astrue*, 2010 WL 2998676, *4 (W.D.N.Y. 2010) (holding that "[a]n ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified").

The ALJ failed to identify the physical limitations opined by Dr. Leddy, such as in sitting, standing, twisting, stooping, crouching, grasping, and fine manipulation. (Tr. 702-04, 1431, 1433, 1604-06). The only physical limitation mentioned in the analysis of according limited weight is that the plaintiff's gait was normal at some visits with other providers, such as the one-time visit with the consultative examiner, but the ALJ acknowledged that Dr. Leddy's treatment notes repeatedly reported an unsteady gait. (Tr. 904, *See e.g.,* 864, 1270, 1278, 1280, 1286). There is no discussion regarding the manipulative limitations which were opined consistently over time. Regarding the mental limitations, the ALJ generally notes Dr. Leddy's opinions were of marked limitations and very limited abilities, but again only identified a few of the broad conclusions from the opinions and not the function-by-function limitations identified.

In his 20 page decision, ALJ Hamel devoted one paragraph in addressing the weight given to Dr. Leddy's eight opinions. One of the reasons provided by the ALJ for according little weight is that the plaintiff's condition was only labeled as a "mild traumatic brain injury." (Tr. 904). The ALJ is not a doctor and has no expertise to opine on the medical or clinical significance of an impairment being labeled as mild. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("In analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.") (internal quotation and citation omitted); *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion.") (internal quotation and citation omitted). Significantly, although assessed by Dr. Leddy as a mild traumatic brain injury after the initial evaluation in 2012, going forward Dr. Leddy referred to plaintiff's TBI as moderate. (Tr. 836-37, *see, e.g.,* Tr. 877, 1282).

In considering the plaintiff's treatment success as a good reason to accord Dr. Leddy's opinion little weight, the ALJ noted the plaintiff acknowledged that he benefited from cognitive therapy. (Tr. 904). However, the ALJ was cherry picking this piece of evidence because the sole record cited by the ALJ is an August 2014 appointment with Dr. Leddy. The full treatment note discussed the need to continue vestibular therapy and cognitive therapy while also referring him for additional addiction treatment specialized for patients with a combination of brain injury and addiction problems. It is well-settled that cherry-picked evidence does not provide good reasons for minimalizing a treating physician's opinion. *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019); *Tim v. Colvin*, 2014 WL 838080, at *7 (N.D.N.Y. Mar. 4, 2014) (ALJ's cherry-picking disregarded the clear weight of the treatment notes and does not show good cause for refusing to give controlling weight to *Tim's* treating source). Subsequent cognitive therapy records in 2016 from Dr. Radziwon indicate an almost tearful behavioral presentation, forgetfulness with appointments, and fidgeting presentation with a depressed and anxious mood. (Tr. 710, 712, 714).

Dr. Radziwon's opinion was also accorded little weight merely because treatment notes showed plaintiff had an appropriate affect. (Tr. 904). The ALJ stated:

> Notes show that the claimant had frustrated, sad, and anxious mood upon examination but appropriate affect. (Ex. 44F/2, 9, 72, 75). This does not support a determination that the claimant is unable to work. (Tr. 904).

This finding is not a sufficient reason under the regulations. Furthermore, the ALJ characterized Dr. Radziwon's opinion as a finding that the claimant is disabled which is an issue reserved to the Commissioner. (Tr. 904). However, the opinion was five pages long, identifying signs and symptoms of the impairments, along with numerous mental abilities and aptitudes needed to do unskilled work. (Tr. 1671-73). There were also significant amounts of narrative explanations for the level of limitations opined, with no direct statement that plaintiff is disabled. (Tr. 1673). In

actuality, Dr. Radziwon's opinion reiterates the treatment notes that plaintiff's counseling had limited benefit and he could benefit from a higher level of care. (Tr. 1669). Notably, consistent with the opinions and records from Dr. Leddy, he also offered the additional narrative that the TBI limits plaintiff's ability with complex sequencing and his mental health affected his cognitive abilities. (Tr. 1672). In sum, it is unclear if the ALJ considered Dr. Radziwon's opinion in its entirety, but in any event, he failed to provide good reasons for the portion discounted. Further, the ALJ did not discuss Dr. Radziwon's treatment records despite five years of psychiatric treatment. *Estrella*, 925 F.3d at 96 (remanding where ALJ "failed to 'explicitly consider' the first *Burgess* factor - 'the frequency, length, nature and extent of [the treating relationship]'—before weighing the value of the opinion.") (citation omitted).

Finally, the ALJ repeatedly referenced plaintiff's substance abuse apparently to discredit plaintiff but without doing a drug and alcohol analysis. However, the ALJ did concluded that the opinion of treating psychiatrist, Dr. Benedict, was accorded little weight because it was "possible his substance abuse affected his presentation" during the visit. (Tr. 911). Plaintiff had disclosed his drug and alcohol use to Dr. Benedict and there is no statement by the doctor that substance use impacted plaintiff's presentation. (Tr. 1252). This was clearly the ALJ playing doctor and inappropriate. Furthermore, Dr. Leddy's treatment notes and opinions discussed the co-morbidity of plaintiff's substance abuse within the context of his TBI, and it is unclear if the ALJ considered the combined effect of all plaintiff's impairments.

There are other opinions in the administrative record, including consultative examiners, but all were accorded little or limited weight. (Tr. 904-05). The ALJ's cursory consideration of the opinion evidence and analysis was insufficient to assure the Court that the substance of the treating physician rule was not traversed. *Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32). While

the defendant offers reasons for the weight accorded by the ALJ, *post hoc* rationalizations are not an appropriate substitute for an ALJ's duty to support his conclusions by reference to substantial evidence. Remand solely for the calculation of benefits is not warranted. Although plaintiff's case has been ongoing for many years there has been no delay in the administrative proceedings and further findings are necessary here. Remand is the appropriate remedy to determine plaintiff's limitations based on the medical evidence, opinions, and other substantial evidence in the record.

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: April 07, 2022  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge